IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRIC OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 7:12-cr-42 |
| | ) | |
| | ) | |
| SHAWN PATRICK MANNING | ) | |

## MOTION FOR REDUCTION IN TERM OF IMPRISIONMENT PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Mr. Manning was sentenced to 188 months in 2013 for his participation in a conspiracy to distribute marijuana and to launder money. 188 months was the low end of the career offender guideline range as calculated by his presentence report. But as the law makes clear today, Mr. Manning never should have been classified as a career offender. Without that erroneous designation, his total offense level at the time would have been a 29, not a 31, making his guideline range only 151-188 months. Today, after the retroactive guideline Amendment 782 is applied to his case, his guideline range would be only 130-162 months. In other words, Mr. Manning is serving nearly 5 years more than he would receive for the same offense today. This Court should reduce his sentence by at least those 5 years for the reasons set forth below. The lead defendant in this case – Cynthia Little – has already been released to home confinement. And this Court granted Kia Manning compassionate release in November of 2020.

## LEGAL ANALYSIS

Section 3582(c)(1)(A), as amended by the First Step Act of 2018, vests this Court with the authority to reduce a sentence if (1) the defendant presents "extraordinary and compelling reasons" warranting a sentence reduction; (2) a reduction would be consistent with "applicable policy statements" issued by the Sentencing Commission; and (3) the § 3553(a) sentencing factors merit a reduction. As the Fourth Circuit recently held, however, there is currently no "applicable" policy statement governing § 3582(c)(1)(A) motions filed by defendants. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). In absence of an "applicable" policy statement governing motions filed by defendants, "district courts are 'empowered…to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* (emphasis in original); *see also United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020) (same); *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020) (same).

### I. There are extraordinary and compelling reasons for release in this case.

The fact that Mr. Manning would not be considered a career offender today, and never should have been a career offender, is sufficient on its own to establish "extraordinary and compelling reasons" for sentencing relief. Taken together with the changed charging and sentencing landscape (including Amendment 782) as well as the lengthy term of imprisonment Mr. Manning has already served, and the disparity in sentences between Mr. Manning and his co-defendants, the "extraordinary and compelling" threshold is certainly satisfied

2

Indeed, if Mr. Manning was prosecuted for the same crime today, he would face a significantly lower sentencing guideline range, which, in turn, would have resulted in a substantially lower sentence than the 188 months he received. At least three factors would have driven down his sentence: (1) the career-offender enhancement would no longer apply, (2) Mr. Manning would receive the benefit of Amendment 782 without his career offender designation, and (3) courts routinely grant downward variances in similar non-violent cases.

Mr. Manning's 188-month sentence greatly exceeds what he would receive for his offense today as he would no longer qualify as a career offender. The implication of his career offender designation is significant both because of the increase in offense level the guideline requires, but also because it made Mr. Manning ineligible for a subsequent sentence reduction under Amendment 782. Indeed, with the incorrect career offender designation, Mr. Manning's guideline range is 188-235 months. But today, without the designation, his guideline range is instead 130-162 months.[1] Mr. Manning's instant offense was for conspiracy to distribute and has been recognized by the Fourth Circuit as not meeting the definition of a "controlled

---

[1] In this district, the fact that a defendant would no longer be a career offender and thus would receive the benefit of Amendment 782 has been recognized as extraordinary and compelling in and of itself. *See United States v. Trice*, 2021 U.S. Dist. LEXIS 23603 (W.D. Va. Feb. 3, 2021). More generally, this district has held that the fact that if the defendant was sentenced today for the same conduct, he would receive a dramatically lower sentence constitutes "extraordinary and compelling" reasons justifying sentence reduction under § 3582(c)(1)(A). *See United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) (Urbanski, C.J.). Other districts in the Fourth Circuit have ruled the same. *See, e.g.*, *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020); *United States v. Redd*, 444 F. Supp. 3d 717, 722-23 (E.D. Va. 2020).

substance offense" under § 4B1.2. *United States v. Norman*, 935 F.3d, 232, 239 (holding that because a "conspiracy" conviction under § 846 lacks an overt act requirement, it is a categorical mismatch to the generic crime of conspiracy enumerated in § 4B1.2(b), and therefore cannot count as a "controlled substance offense"). In addition, "theft from a person" in New Jersey is distinct from "robbery" and does not require as an element the use of force. Therefore, Mr. Manning's would also only have one qualifying prior career offender predicate.

Judges have found "extraordinary and compelling reasons" to grant relief if the defendant no longer qualifies as a career offender under the law today. This Court has already held that even a defendant sentenced under advisory guidelines with a career offender designation that would no longer apply today has demonstrated extraordinary and compelling circumstances if the Court believes the guideline overstates the seriousness of the offense. *United States v. Trice*, 2021 U.S. Dist. LEXIS 23603, at *7-8 (W.D. Va. Feb. 3, 2021) (finding the fact that the defendant would no longer be considered a career offender and would have received the benefit of Amendment 782 to constitute "extraordinary and compelling reasons" justifying release). Other courts have held similarly. *See, e.g., United States v. Day*, 474 F. Supp. 3d 790, 806-07 (E.D. Va. 2020) (granting defendant's compassionate release motion because he no longer would be considered a career offender and the substantial decrease in his applicable guideline statement constitutes "extraordinary and compelling reasons justifying a reduction."); *United States v. Derricoatte*, No. 1:11-cr-91-10, 2020 WL 5629095, at *4 (N.D. Ohio Sept. 21, 2020)

4

(determining the sentencing disparity created by the fact that defendant would not be classified as a career offender today supported a finding of "extraordinary and compelling" reason justifying release, even though defendant was properly determined to be a career offender under existing law when originally sentenced); *United States v. Wahid*, No. 1:14-cr-00214, 2020 WL 4734409, at \*2 (N.D. Ohio Aug. 14, 2020) (finding "extraordinary and compelling reasons" to grant compassionate release based on a combination of factors, including that the defendant no longer qualified as a career offender under current law); *United States v. Flakes*, No. 14-CR-214, ECF No. 1142 at 4 (N.D. Ohio July 20, 2020) (finding "extraordinary and compelling" grounds to reduce defendant's sentence based in part on the fact that intervening case law changed defendant's career-offender status). In fact, in *United States v. Smith*, No. 14-CR-189-TSC, ECF No. 76 at 3-5 (D.D.C. May 14, 2020), the U.S. District Court for the District of Columbia held that the fact that the defendant no longer qualified as a career offender—even though the defendant's original sentence fell within the now-applicable, non-career-offender guidelines range—was sufficient on its own to establish an "extraordinary and compelling" reason for relief.

## II. The § 3553 sentencing factors readily support release in this case.

A. *The need to avoid unwarranted sentencing disparities support release.*

This Court must consider the unwarranted sentencing disparity between Mr. Manning and similarly situated offenders sentenced today. The Fourth Circuit explained that "[a] new legal rule will inevitably lead to disparities between individuals sentenced prior to the rule and those sentenced after it comes into

5

effect" and that "changed legal circumstances easily fall within the cross-referenced § 3553(a)(6) factor, 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *United States v. McLeod*, 972 F.3d 637, 644 (4th Cir. 2020) (internal citations omitted). Even though *Norman* is not a "new rule" in that it reveals how the career offender guideline always should have been interpreted, the disparities pre and post-*Norman* are stark.

Critically, even if Mr. Manning was still a career offender today, only 22.6% of defendants who qualify as career offenders receive sentences within the career offender guidelines range.[2] Nearly half of all career offenders receive a substantial below-range variance, with an average sentence reduction of 38%.[3] If Mr. Manning received a 38% reduction from the low end of his career offender guideline range (188 months), he would have been sentenced to approximately 116 months and his release date would be right around the corner.

But a reduction is also necessary to avoid unwarranted sentencing disparities with his other non-career offender co-defendants. Indeed, both Kia Manning and Cynthia Little were far more culpable members of this conspiracy, but both have already been released from custody.

B. *The nature and circumstances of the offense.*

---

[2] U.S. Sent'g Comm'n, *Career Offenders Quick Facts, Fiscal Year 2019* (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Career_Offenders_FY19.pdf.)
[3] *Id.*

6

Mr. Manning was convicted of his role in a conspiracy to distribute marijuana from between 2006 and 2011. The conspiracy was never alleged to have used any violence as part of these distribution efforts. Today, there is a growing legal marijuana industry where a lot of money can be made for people who obtain the right licenses and contracts to distribute marijuana. Mr. Manning did not have those things, and he made very little money for his role in the offense – only enough to pay for his child support and to purchase heroin to feed his own drug addiction. PSR ¶ 47. Finally, Mr. Manning's role was relatively minor compared to many others in the conspiracy. For these reasons, the nature and circumstances of the offense do not suggest that a sentence of 188 months is necessary.

    C. *Mr. Manning has demonstrated rehabilitation while incarcerated in the BOP.*

During his time while incarcerated, Mr. Manning has had only two disciplinary infractions. The first was serious in nature – possessing a homemade weapon in his cell. This happened while Mr. Manning has been incarcerated at USP Hazleton – known as "one of the most dangerous federal prisons in the country."[4] Concerns about understaffing and violent incidents at Hazleton have been consist for a number of years. Since Hazleton opened in 2004, the prison has averaged one murder a year, and in 2018 there were three murders and over 200 violence incidents. It is significant that Mr. Manning has never been in so much as a fight at Hazleton, and that his only charge was for simply have a homemade

---

[4] https://www.huffpost.com/entry/whitey-bulger-hazelton-prison_n_5bda55c7e4b01abe6a1b257c

weapon (for protection). Mr. Manning's only other disciplinary infraction, ever, has been for missing a class in 2016.

Speaking of classes, Mr. Manning has been steadily working on his GED since he started at Hazleton. But he dropped out of school in 10th grade, and progress has been difficult. Mr. Manning has stayed employed as a compound orderly throughout his incarceration. And he completed drug treatment.

D. *Mr. Manning has a viable release plan.*

Whenever he is released, Mr. Manning plans to reside with his mother in Irvington, New Jersey and serve as her caretaker.[5]

### III. Mr. Manning's motion before this Court is timely.

Mr. Manning, through the undersigned counsel, made a request for a reduction in sentence to the Warden of USP Hazleton on February 11, 2021. More than 30 days have now passed, making this motion timely.

### CONCLUSION

In conclusion, this Court should grant this motion to reduce Mr. Manning's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) by at least five years but up to a sentence of time served.

Respectfully submitted,

SHAWN MANNING

By Counsel,

---

[5] Counsel would be glad to provide the address and a phone number for probation to conduct a home study.

/s Lisa M. Lorish
Lisa M. Lorish (VSB No. 81465)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market Street, Ste 106
Charlottesville, VA 22902
Tel (434) 220-3380

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (ECF) to all parties of record.

/s Lisa M. Lorish
Lisa M. Lorish (VSB No. 81465)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market Street, Ste 106
Charlottesville, VA 22902
Tel (434) 220-3380